```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
```

| | |
|---|---|
| MARIA E. BARRANCO,           )<br>                              )<br>          Plaintiff,         )<br>                              )<br>     v.                       )<br>                              )<br>JO ANNE B. BARNHART,          )<br>Commissioner of Social       )<br>Security,                     )<br>                              )<br>          Defendant.          )<br>_____) | Case No. CV 05-8059-JTL<br><br><br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On November 14, 2005, Maria E. Barranco ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. Thereafter, on November 30, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On May 18, 2006, defendant filed an Answer to Complaint. On September 7, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///
///
///

**BACKGROUND**

On March 6, 2003, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 54-57). Plaintiff previously filed two prior applications for supplemental security income on May 28, 1996 and June 6, 2001, which were denied at the initial stages. Plaintiff did not appeal the decisions. (AR at 19). In her current application, plaintiff claimed that, beginning on August 1, 1990, surgery and screws in her arms, shoulders, and hands, as well as blackouts prevented her from working. (AR at 54, 70). The Commissioner denied plaintiff's application for benefits. (AR at 40-43). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 44).

On July 20, 2004, the ALJ conducted a hearing in Downey, California. (AR at 504-17). Plaintiff appeared at the hearing with counsel and testified. (AR at 508-16). An interpreter was also present. (AR at 504). On October 28, 2004, an evidentiary hearing took place in Downey, California, and plaintiff's counsel offered additional evidence into the record. (AR at 518-21).

On or about December 20, 2004, the ALJ issued his decision denying benefits. (AR at 19-23). In his decision, the ALJ concluded that plaintiff did not suffer from any severe impairments. (AR at 21). The ALJ also found that plaintiff's subjective complaints were not credible. (Id.). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (AR at 22).

On February 17, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 12-13). On September 21, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1. The ALJ failed to give proper consideration to the effect of the December 27, 2001 determination.

2. The ALJ improperly assessed the presence of a non-severe combination of impairments.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///
///
///
///

**DISCUSSION**

**A.     The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Bowen, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits her physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work she has performed in the past. Id. If the claimant cannot perform her past work, the fifth and final step determines whether she is able to perform other work in the national economy in light of her age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if she is not able to perform such work. Id.

**B.     Consideration of the December 27, 2001 Determination**

Plaintiff contends that the ALJ failed to give proper consideration to the December 27, 2001 determination, in which the Commissioner denied plaintiff's second application for benefits at the

4

initial stage of review. Plaintiff now claims that the ALJ should have reopened the case and evaluated plaintiff's condition under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988). This Court disagrees.

The ALJ found that the instant application constituted a request to reopen the prior applications because it alleged disability since 1990. The ALJ, however, found that insufficient reasons existed for reopening the prior applications, as no evidence exists that would materially change the determination of disability for the period covered by the prior denials. As such, the ALJ denied plaintiff's request to reopen the case and the December 27, 2001 decision constituted the final determination.[1] (AR at 19).

In Chavez, the Ninth Circuit held that the first ALJ's findings regarding the claimant's residual functional capacity, education, and work experience were entitled to some res judicata considerations, but attainment of "advanced age" constituted a changed circumstance precluding application of res judicata to the first ALJ's ultimate finding against disability. Chavez, 844 F.2d at 693. Relying upon Chavez, plaintiff contends that the December 17, 2001 determination created a presumption of continuing non-disability that was rebutted by the evidence in the current case. (Joint Stip. at 4-5). Plaintiff asserts that because she turned 55 after the 2001 determination, the

---

[1] The Commissioner may apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application. Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985), cert. denied, 475 U.S. 1025 (1986). As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review. Id. An exception does exist, however, where the Commissioner considers "on the merits" the issue of the claimant's disability during the already-adjudicated period. Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

1 change in plaintiff's age constitutes a "changed circumstance" that
2 precludes application of res judicata since the 2001 determination.
3 See Chavez, 844 F.2d at 693.

4     As noted by defendant, the holding in Chavez applies to a prior
5 finding of nondisability from an Administrative Law Judge and not to
6 an initial denial of benefits, as in the instant case.  Indeed, the
7 Chavez court wrote, "The claimant, in order to overcome the
8 presumption of continuing disability <u>arising from the first
9 administrative law judge's findings of nondisability</u>, must prove
10 'changed circumstances' indicating greater disability." Chavez, 844
11 F.2d at 693 (emphasis added). Similarly, Acquiescence Ruling 97-4(9)[2]
12 interpreted Chavez and clearly held that Chavez "applies only to cases
13 involving a subsequent disability claim with an unadjudicated period
14 arising under the same title of the Act as a prior claim on which
15 there has been a <u>final decision by an ALJ or the Appeals Council</u> that
16 the claimant is not disabled." Acquiescence Ruling 97-4(9) (emphasis
17 added).  Plaintiff cites cases in which she asserts that the level of
18 decision-making in the prior determination was not referenced, and
19 presumably not important.  See Taylor v. Heckler, 765 F.2d 872, 875
20 (9th Cir. 1985); Booz v. Secretary, 734 F.2d 1378, 1379 (9th Cir.
21 1984).  The Court is unpersuaded by plaintiff's arguments,
22 particularly in light of the fact that both Taylor and Booz preceded
23 Chavez and Acquiescence Ruling 97-4(9).  As such, the Court finds that
24 ///

---

[2] Acquiescence Rulings "explain how SSA will apply a holding[] by a United States Court of Appeals that is at variance with [the SSA's] national policies for adjudicating claims." Such rulings, however, do not have the force and effect of the law or regulations. http://www.socialsecurity.gov/regulations/def-ar.htm.

the ALJ did not err in his consideration of the December 27, 2001 determination.

**C.     The Severity of Plaintiff's Physical and Mental Impairments**

Plaintiff claims that the ALJ erred in finding that the plaintiff's mental and physical impairments, either singly or in combination, did not constitute a severe impairment. Additionally, plaintiff contends that the ALJ should have ordered a consultative examination to determine the disabling effects of her physical impairments. As discussed below, the Court disagrees.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306). The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

**1.     Mental Impairments**

According to plaintiff, the ALJ improperly assessed non-severity with regard to her mental limitations. Plaintiff cites to a

7

Psychiatric Evaluation performed by Jobst Singer, M.D., on May 3, 2003. (AR at 180-83). In the evaluation, Dr. Singer noted that plaintiff's mood was "sad," plaintiff could recall all three items tested after five minutes if prompted for the second and third item, and plaintiff could spell the word "WORLD" forwards and backwards in Spanish. (AR at 181-82). Dr. Singer also diagnosed plaintiff with mood disorder, not otherwise specified, moderate psychosocial stressors, and a Global Assessment of Functioning[3] ("GAF") score of 60.[4] Plaintiff appears to argue that Dr. Singer's report did not constitute substantial evidence because the physician relied on the assistance of an interpreter. (Joint Stip. at 12). Plaintiff further contends that Charles Stone, M.D., a State Agency physician, erroneously relied on Dr. Singer's report when he determined that plaintiff did not suffer from any severe impairment. (Id.; AR at 192-205). The Court is not persuaded by plaintiff's arguments.

Notwithstanding his diagnoses of mood disorder and moderate stressors, Dr. Singer opined that plaintiff's mental examination "showed some mild errors only." (AR at 182). Dr. Singer found no psychiatric factors "that would significantly interfere with [plaintiff's] ability to complete a normal day of work" and no significant impairment "that would increase safety risks above normal

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[4] A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

in the usual work setting." (AR at 182). Dr. Singer also found that plaintiff's "ability to relate and interact with coworkers and the public is not impaired." (Id.). Similarly, Dr. Stone opined that plaintiff had no restrictions with respect to activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, and pace. (AR at 202). Finally, plaintiff herself testified at the hearing that mental health problems did not play a role in her alleged inability to work and that she did not suffer from any psychiatric problems. (AR at 516). Given both plaintiff's testimony and the opinion evidence from medical experts, the ALJ fairly concluded that plaintiff's mental impairment had "no more than a minimal effect on [her] ability to work." Smolen, 80 F.3d at 1290. As such, the ALJ committed no error in finding that plaintiff's mental impairment was not severe.

### 2. **Physical Impairments**

According to plaintiff, the ALJ improperly assessed non-severity with regard to her physical limitations. Plaintiff contends that the ALJ failed to give proper weight to her numerous physical complaints, including abdominal pain, left knee impairment and pain, and shoulder pain. (Joint Stip. at 13). Additionally, plaintiff cites to the diagnoses of multiple treating physicians who noted various physical impairments. (Joint Stip. at 13-14). For instance, on September 19, 2003, plaintiff's treating physician, Albert A. Sormillon, M.D., diagnosed her with otitis media on the left side, bronchial asthma stable, controlled hypertension, the possibility of arthralgias, the possibility of gastroesophageal reflux disease, and hearing loss. (AR at 400). On March 9, 2004, a treating physician diagnosed plaintiff with hypertension, glaucoma, migraine headaches, history of asthma

9

controlled, history of gastroesophageal reflux disease, and carpal tunnel syndrome. (AR at 425). On April 2, 2004, Janis Owens, M.D., reviewed plaintiff's x-rays and found Grade 4 acromioclavicular dislocation of the right shoulder, degenerative changes of the acromioclavicular joint, and degenerative disc disease of the lower cervical spine. (AR at 479, 481, 482). On July 16, 2004, Dr. Sormillon diagnosed plaintiff with incisional hernia, chronic eczema, hypertension, and gastritis. (AR at 471). On July 13, 2004, Julie Sun, M.D., reviewed plaintiff's MRI of her brain and found small vessel ischemic change and minimal left mastoid air cell mucosal thickening. (AR at 501). Dr. Sun also reviewed a MRI of plaintiff's cervical spine and found mild cervical spine kyphosis, possibly related to muscle spasm; mild spondylosis at C5-C6 with minimal posterior disc bulge; and borderline spinal canal size at C4-C5 and C5-C6. (AR at 502). Plaintiff contends that the combination of these physical impairments are severe and that the ALJ should have ordered a consultative examination to determine the affects of her physical impairments on her ability to work.

While plaintiff's treating physicians made multiple diagnoses with respect to her impairments, the mere diagnosis of an impairment is insufficient to sustain either a finding of disability or rise to the level of a severe impairment. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985); Baker v. Barnhart, 2002 WL 460828 at *1 (9th Cir. 2002). Significantly, none of the physicians opined that plaintiff suffered from any impairment that would more than minimally affect her ability to work. Furthermore, as noted by the ALJ, a State Agency physician reviewed plaintiff's medical records and affirmatively found no severe impairment. (AR at 21, 184).

10

With respect to plaintiff's claim that the ALJ should have called a consultative examiner to review her physical impairments, an ALJ may obtain the opinion of a consultative examiner if the ALJ determines that "information [he] need[s] is not readily available from the records of [plaintiff's] medical treatment source, or [he is] unable to seek clarification from [plaintiff's] medical source."  20 C.F.R. § 416.912(f).  When it is necessary to enable the ALJ to resolve an issue of disability, however, the duty to develop the record may require consulting a medical expert or ordering a consultative examination:

> **§ 404.1519a When we will purchase a consultative examination and how we will use it.**
>
> (a)(1) General. The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources.  See § 404.1512 for the procedures we will follow to obtain evidence from your medical sources. Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.
>
> (2) When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists.  We will also use a consultative examination to secure needed

11

> medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.

20 C.F.R. § 404.1519a. The statute lists situations that normally require consultative examinations, such as cases where (1) medical sources do not contain additional information needed; (2) evidence from medical sources cannot be obtained for reasons beyond the claimant's control, such as death or noncooperation; (3) medical sources do not contain highly technical or specialized medical evidence; (4) a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved and the Commissioner is unable to do so by recontacting a claimant's medical source; or (5) the existence of a change in the claimant's condition that likely affects his or her ability to work. 20 C.F.R. § 404.1519a(b).

Here, the ALJ did not err in failing to obtain a consultative examiner's opinion. First, plaintiff's medical records do not appear to be incomplete or contain any ambiguities regarding plaintiff's physical impairments. Although plaintiff contends that the ALJ should have consulted a medical expert, the decision to order a consultative examination is discretionary. Breen v. Callahan, 56 Soc. Sec. Rep. Ser. 340, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998). Furthermore, an ALJ is not required to independently explore every conceivable impairment that afflicts a claimant unless the claimant presents medical evidence indicating the existence of an impairment. Orcutt v. Barnhart, 2005 WL 2387702, at *4 (C.D. Cal. Sept. 27, 2005). While plaintiff presents numerous physical ailments, the Court finds that none of the impairments rose to the level of requiring the ALJ to order a consultative examination.

12

In short, the ALJ made no mistake either in evaluating the severity of plaintiff's impairments or in failing to obtain a consultative examiner's opinion with respect to her physical impairments.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: December 4, 2006

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE